IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROMAN T.,[1] | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:19-CV-159 |
| | ) |
| ANDREW SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Roman T. ("Roman") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1381f. Roman alleges that the Administrative Law Judge ("ALJ") erred by failing to properly consider his mental impairments and by improperly assessing his subjective allegations. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Roman's Motion for Summary Judgment (Dkt. 11) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 13).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Roman was no longer disabled under the Act. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t]

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

1

evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Roman filed for SSI on May 18, 2015, claiming that his disability began on August 31, 2013. R. 15, 181–86. The state agency denied Roman's application at the initial and reconsideration levels of administrative review. R. 61–91. On July 18, 2018, ALJ Thomas Erwin held a hearing to consider Roman's claim for SSI. R. 40–59. Counsel represented Roman at the hearing, which included testimony from vocational expert Barry Hensley. Id.

On August 1, 2018, the ALJ entered his decision analyzing Roman's claim under the familiar five-step process[2] and denying his claim for benefits. R. 15–34. The ALJ found that Roman suffered from the severe impairments of bereavement disorder versus post-traumatic stress disorder; substance use disorder, depression, anxiety, obesity, lumbago, and cervicalgia.

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curium) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

R. 17. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18–21. The ALJ concluded that Roman retained the residual functional capacity ("RFC") to perform a medium work with no more than occasional exposure to hazards and unprotected heights. R. 21. The ALJ further found that Roman is limited to work with simple, routine tasks, in a job without strict production rate or pace requirements; no interaction with the public; and no more than occasional interaction with coworkers and supervisors. Id.

The ALJ determined that Roman did not have past relevant work, and that he could perform jobs that exist in the national economy, such as hand packager, non-postal mail clerk and domestic laundry worker. R. 33. Thus, the ALJ concluded that Roman was not disabled. R. 34. Roman appealed the ALJ's decision and on December 17, 2018, the Appeals Council denied his request for review. R. 1–4. This appeal followed.

## ANALYSIS

### Concentration, Persistence or Pace

Roman asserts that the RFC limitations of simple, routine, repetitive work do not address his deficits in concentration, persistence or pace and that the ALJ's decision does not satisfy the assessment required by SSR 96-8P. Pl. Br. Summ. J. p. 14. Roman also asserts that the RFC does not address his ability to concentrate over a period of time, persist at tasks, or perform work at a particular pace over the course of a workday or workweek. Id.

SSR 96-8P[3] requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. 1996 WL 374184 (S.S.A. July 2,

---

[3] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20

1996); Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

I find that the ALJ's decision adequately explains why a restriction to simple, routine tasks, in a job without strict production rate or pace requirements, properly accommodates Roman's moderate limitation with concentration, persistence and pace. In Mascio v. Colvin, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 638. The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect a claimant's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. 780 F.3d at 638. The court found error in Mascio because the ALJ did not

---

C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

4

explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC.

The Mascio decision does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace must always translate into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty of explanation to adequately review the evidence and explain the disability decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled work. Indeed, in Shinaberry v. Saul, No. 18-2096, 2020 WL 908887, at *4 (4th Cir. Feb. 26, 2020), the court emphasized that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC. On the contrary, we explained that an 'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." Id. (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). The Fourth Circuit noted that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The ALJ has the responsibility to address the evidence of record that supports that conclusion and ensure that the hypothetical presented to the vocational expert includes all the limitations set forth in the RFC.

Here, substantial evidence supports the ALJ's decision that despite Roman's limitations in concentration, persistence, or pace, he can perform simple, routine tasks in a job without production rate or pace requirements. The ALJ found that Roman had moderate limitations in the

5

domains of understanding, remembering and applying information, interacting with others, and concentration, persistence or pace in step three of his decision. R. 19–20. Specifically, regarding the domain of concentration, persistence or maintaining pace, the ALJ noted that this area of functioning concerns actions that demonstrate the ability to focus attention on work activities *and* stay on task at a sustained rate. Id. The ALJ noted the following:

> Here, the claimant's representative argued that the claimant's limitations in this area prevent him from completing a full eight-hour workday. While it is reasonable to expect that the claimant's psychologically-based symptoms would interfere in this domain to some extent, the undersigned notes that the claimant performed adequately on cognitive tasks during the consultative examination. The claimant was not observed to have cognitive deficits during other documented encounters; on the contrary, his attention and concentration were described as fair or better. In addition, the claimant reportedly enjoys leisure activities that require some concentration and persistence, such as playing videogames and card games. Based on the foregoing and other evidence discussed in this decision, the record supports no more than a "moderate" limitation in this area. Nevertheless, the claimant retains the capacity to perform simple, routine tasks, in a job without strict production rate or pace requirement. Because of his "moderate" limitation in this area, the claimant can have no more than occasional exposure to hazards and unprotected heights.

Id. at 20.

In step four of his decision, the ALJ noted that Roman reported increased depression, anger control issues and paranoia. R. 22. Roman testified at the administrative hearing that he has post-traumatic stress disorder as a result of watching his wife die of cancer. He takes medications for his mental impairments but cannot work well with others and has never been able to hold a job due to problems with coworkers and supervisors. R. 22. Roman testified that he loses track of conversations and loses track of days. Id. Roman also testified that he used marijuana about one month before the administrative hearing, used cocaine on his birthday, and has experimented with alternative drugs. R. 22, 51. Roman testified that he was currently

6

homeless and living with a friend, and that he takes out the trash. R. 49. Roman previously lived with his mother-in-law and Aunt, until they were placed in a nursing home. R. 22, 49.

The ALJ reviewed Roman's medical records in detail and noted that Roman had a brief inpatient admission in April 2013 for treatment of depression with psychotic symptoms and anger issues, in the setting of stressors and substance abuse. R. 29. Roman was also hospitalized in 2015 when he was off his prescribed medications and using substances, shortly after his wife's death. Id. Roman began seeking care with Blue Ridge Behavioral Health in mid-2016 and did not require inpatient treatment after that time. Id.  The ALJ noted that "despite his ongoing subjective mood and anxiety complaints, and varying degrees of substance abuse, mental status examinations consistently showed that the claimant's overall appearance and behavior were typically appropriate in the clinical setting, and that his observed mental status was largely unchanged from one encounter to the next." R. 30 (internal citations omitted).

The ALJ reviewed the opinions of consultative examiner Marvin A. Gardner Jr., Ph.D., and state agency psychologists Jo McClain, Psy. D., and Andrew Bockner, M.D., as to Roman's mental functional capacity in detail and gave them all significant weight. R. 30–31. Specifically, Dr. Gardner performed a mental status examination of Roman in May 2017, and determined that he can perform simple and repetitive work tasks and maintain regular attendance in the work place. R. 403. Dr. Gardner diagnosed Roman with alcohol use disorder, cannabis use disorder, bipolar 1 disorder, agoraphobia, and other specified personality disorder with borderline and antisocial traits. R. 402–03. Specifically, regarding concentration, Dr. Gardner noted that Roman was able to complete serial 3s in 60 seconds with no errors and complete serial 7s, and stated, "[h]e should have no impairment of concentration, persistent [sic], or pace when attempting simple and repetitive work tasks." R. 402. Dr. Gardner found that Roman is of normal-to-low

7

average intelligence and is able to perform work activities without special or additional supervision. Id. Dr. Gardner also found that Roman can complete a normal work day or work week without interruptions resulting in his psychiatric condition. Id. Regarding social functioning, Dr. Gardner determined that Roman can accept instructions from supervisors and interact with supervisors and coworkers with no more than a moderate impairment of social interaction due to personality traits. R. 403. Dr. Gardner found that Roman cannot interact with the general public due to his personality traits but is able to deal with the usual stressors encountered in competitive work when remaining abstinent from substances and adherent to psychiatric treatment. Id.

The ALJ gave Dr. Gardner's opinion significant weight because "his conclusions are well supported by his personal observations of the claimant and are consistent with other evidence." R. 31. The ALJ noted that Dr. Gardner found that Roman's memory and computational ability were moderately impaired, and his fund of general information appeared moderately-to-markedly impaired; but he was able to complete serial threes in 60 seconds with no errors and serial sevens. Id. The ALJ also noted that Roman appeared alert and oriented and presented to his treatment providers with fair to intact memory, attention and concentration. Id. The ALJ concluded that Roman could perform simple and repetitive work tasks. Id.

The ALJ gave significant weight to the opinion of state agency physician Jo McClain, Psy D., that Roman can understand very short simple instructions, carry out short instructions on a routine basis, and ask simple questions related to work. R. 70–71. The ALJ also gave significant weight to the opinion of state agency physician Andrew Bockner, M.D., who determined that Roman could understand very short simple instructions, carry out short instructions on a routine basis, ask simple questions and request assistance, and could work for at

8

least two hours at a time. R. 87–88. Dr. Bockner concluded, "[in] sum he would be able to perform competitive work with limited contact with others." R. 88.

The ALJ noted that Drs. McClain and Bockner had specialized expertise and understanding of the SSA's disability program and evaluated Roman's longitudinal history. R. 31. The ALJ found Drs. McClain and Bockner's opinions well supported and consistent with the totality of the evidence, including Dr. Gardner's assessment. Id.

Thus, unlike in Mascio, the court here is not left to guess at the ALJ's decision-making process. The ALJ relied upon the conclusions of Drs. Gardner, McClain and Bockner that despite his moderate impairments in concentration, persistence or pace, Roman can perform simple, repetitive work tasks. The ALJ discussed those opinions in his decision and gave them great weight. R. 30–31. The ALJ accommodated Roman's limitations by providing an RFC of "simple, routine tasks, in a job without strict production rate or pace requirements" (R. 21), which he included in the hypothetical question given to the vocational expert. R. 56. See Shinaberry, 2020 WL 908887, at *4 (ALJ properly relied on evaluation of state agency psychologist and consultative examiner that the mental limitation to simple, routine, and repetitive tasks accounted for the claimant's moderate limitations in concentration, persistence, or pace). Notably, no other treating, examining or reviewing physicians assessed more restrictive non-exertional limitations than those set forth in the RFC.

Roman asserts that the ALJ cannot rely upon the medical opinions in this case to support his conclusion that Roman can sustain work for an 8-hour day because the physicians did not make that specific finding. Indeed, Drs. McClain and Bockner concluded that Roman could understand and carry out short simple instructions on a routine basis and could sustain attention for at least two hours at a time. R. 70–71, 87. Dr. Bockner further stated that Roman would be

9

able to perform "competitive work" with limited contact with others. R. 87. However, Dr. Gardner specifically addressed Roman's ability to maintain work activity on a sustained basis over the course of an eight-hour workday, stating, "[h]e is able to complete a normal work day or work week without interruptions resulting [from] his psychiatric condition." R. 403. Dr. Gardner's opinion states that Roman can perform work on a sustained basis over a normal workday, and the ALJ explained why he gave it significant weight.

Roman also asserts that the ALJ erred by failing to define the terms "strict production rate or pace requirements," relying upon Thomas v. Berryhill, 916 F. 3d 307 (4th Cir. 2019). In two recent cases, Thomas v. Berryhill and Perry v. Berryhill, the Fourth Circuit remanded cases in which the ALJ used phrases in the RFC similar to work not at a "production-rate pace," without providing further explanation or definition of that phrase. Thomas, 916 F.3d. at 312; Perry v. Berryhill, 765 Fed. Appx. 869, 872 (4th Cir. Aug. 29, 2019). The terms "production-rate" or "pace requirements" in an RFC alone do not warrant remand of an ALJ's decision. Rather, the issue is whether the ALJ provides sufficient information as to how the RFC accommodates the claimant's limitations, and whether the ALJ provides information for the court to determine what the restrictions in the RFC mean. See Nelson v. Saul, No. 4:18cv163-D, 2019 WL 4748028, at * 5 (E.D.N.C. Aug. 29, 2019) (collecting cases).

Unlike the ALJ's cursory analysis of the plaintiff's mental limitations in Thomas, the ALJ here provided ample discussion of how Roman's mental impairments impact his ability to perform work-related tasks. The ALJ discussed Dr. Gardner's conclusion that Roman could perform simple and repetitive work tasks and complete a normal workday. The ALJ discussed Roman's ability to complete serial threes in 60 seconds with no errors, his ability to complete serial sevens; that he appeared alert and oriented; and presented with fair to intact memory,

attention and concentration during appointments. R. 31. Further, in the hypothetical question presented to the vocational expert, the ALJ clarified, "eliminate those jobs that have a strict production rate or pace requirement whether that's keeping up with a factory assembly line or having to make a certain number of widgets every hour or day." R. 56. Thus, considering the ALJ's explanation and analysis, the ALJ's limitation to simple, routine tasks, in a job without strict production rate or pace requirements is appropriate. See Richardson v. Berryhill, 2019 WL 1354042, at *3 (W.D.N.C. March 26, 2019) ("[I]n light of the ALJ's full decision and analysis, the ALJ's RFC limitation to a nonproduction pace passes Thomas muster because the ALJ contextualized and explained how he reached his conclusion regarding Plaintiff's RFC.")

This case is analogous to Sizemore v. Berryhill, 878 F.3d 72 (4th Cir. 2017), where the Fourth Circuit found that substantial evidence supported the ALJ's determination that the claimant, who had moderate difficulties in social functioning and in concentration, persistence, or pace, would be able to stay on task while working in low stress non-production jobs with no public contact. Id. at 79. In Sizemore, the ALJ relied on findings from state agency psychologists who had found he could maintain attention for at least two hours at a time, and thus could perform basic, routine tasks on a sustained basis. Id. at 80–81. The court concluded that the opinions of these state agency doctors, "provided substantial support for the ALJ's finding that, despite Sizemore's overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to *stay on task* while performing "simple one, two-step tasks," as long as he was "working in low stress non-production jobs with no public contact." Id. citing Mascio, 780 F.3d at 638. Similarly, here, the ALJ relied on the opinions of Drs. Gardner, McClain and Bockner that despite his moderate impairment with concentration, persistence or maintaining pace, Roman could perform simple, routine tasks, in a job without strict production rate or pace

11

requirements. This is not a situation where the ALJ determined that Roman's impairment with concentration, persistence or pace was accommodated by simple, unskilled work without further explanation. Roman's abilities to concentrate, to persist, and to keep a certain pace were addressed by Drs. Gardner, McClain and Bockner and their conclusions in this regard were discussed and adopted by the ALJ. This outcome is specifically contemplated by Mascio and Shinaberry – provided the ALJ explains his reasoning. The ALJ's reasoning here rests on the opinion of the consultative and state agency doctors, and a consideration of the record evidence, and this court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637. As such, I conclude that substantial evidence supports the ALJ's conclusions regarding Roman's RFC.

## Social Interaction

Roman also asserts that the ALJ failed to explain how his RFC findings address and accommodate his moderate limitations with interacting with others. Pl. Br. Summ. J. p. 21. Roman asserts that the ALJ failed to reconcile his conclusion that Roman can have no interaction with the public but can have occasional interaction with others with Dr. Bockner's opinion that Roman can perform competitive work with limited contact with others. Id. Roman asserts that occasional interaction with others is more than the limited contact referenced by Dr. Bockner. Id.

The ALJ reviewed Roman's testimony, medical records and the physician opinions in the record. In step three of his decision, the ALJ determined that Roman had a moderate impairment in social interaction because he testified that he does not like being around people and does not work well with others; he was calm and cooperative with his treatment providers even when experiencing feelings of aggression or frustration toward others; he had no serious deficiencies with eye contact, speech or overall behavior; his activities of daily living included spending

12

some time with family and friends; and he had a new romantic relationship at one point. R. 19–20.

In step four of the decision, the ALJ gave significant weight to Dr. Gardner's findings that Roman can accept instructions from supervisors and can interact with supervisors and coworkers with no more than a moderate impairment of social interaction due to his personality traits. R. 30, 403. Dr. Gardner further found that Roman is not able to interact with the general public due to his personality traits. R. 403. The ALJ also gave significant weight to Dr. McClain's findings that Roman was moderately limited in his ability to interact appropriately with the general public, not significantly limited in his ability to accept instructions and respond appropriately to criticism form supervisors; and moderately limited in his ability to get along with coworkers or peers without distracting them. R. 71. Dr. Bockner agreed with Dr. McClain's findings, and stated that Roman could perform competitive work with limited contact with others. R. 88.

The ALJ summarized his findings regarding Roman's limitations with social interaction, stating,

> [i]t is reasonable to conclude that the claimant can occasionally interact with coworkers and supervisors, but never interact with the general public. The claimant's complaints of aggression and anger are well documented. Yet he was generally able to maintain appropriate behavior in a clinical setting with several different providers. The claimant reported spending some time with friends and relatives, despite his tendency to self-isolate.

R. 31. Accordingly, the ALJ's decision provides an explanation of his conclusion that Roman's limitations with social functioning are accommodated by a limitation to occasional interaction with coworkers and supervisors and no interaction with the general public.

### **Function-by-Function Analysis**

Roman argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to conduct a function-by-function analysis. Specifically, Roman contends that the ALJ failed to make specific findings as to his need to lie down during the day or his rate of unacceptable absenteeism. Pl. Br. Summ. J. p. 22.

A function-by-function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at \*7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the

claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Roman asserts that the evidence of record includes objective findings on examination of bilateral lumbar and trapezius muscle spasms, loss of lordosis of the cervical spine, and limited flexion and extension of the neck. Pl. Br. Summ. J. p. 22. Roman asserts that although he ALJ found that his "medically determinable impairments could reasonably be expected to cause his alleged symptoms," the ALJ did not make specific findings regarding whether Roman's impairments would result in the need to lie down during the day or result in an unacceptable number of absences from work. Id. at 22–23.

Here, Roman's need to lie down and unacceptable rate of absenteeism were not severe impairments, but rather are complaints he made during the administrative hearing that the ALJ found unsupported by the record. The ALJ provided a detailed summary and analysis of Roman's impairments, medical records, testimony and opinion evidence. The ALJ discussed Roman's symptoms, his resulting limitations, the medical evidence, medical opinions, Roman's testimony, his credibility and conflicting medical evidence. R. 21–32.

The ALJ acknowledged Roman's testimony that he lies down three to four times per day for two to three hours each time, partly due to pain and partly because his medications are very sedating. R. 22. The ALJ found that Roman's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medial evidence and other evidence in the record for reasons explained in this decision." R. 29.

15

The ALJ reviewed Roman's medical records and noted that diagnostic imaging of his lumbar spine was negative and his cervical spine was negative apart from loss of normal lordosis. Roman had some tenderness, spasms and range of motion loss on exam, but intact motor strength, sensation and reflexes, and no evidence of neurological compromise. His straight leg raise test was negative bilaterally and his symptoms of back and neck pain were treated conservatively. The ALJ also reviewed the opinion of state agency reviewing physician Robert McGuffin, M.D., that Roman had no physical medically determinable impairments. R. 32, 67. Upon reconsideration, state agency physician Cheryl Arenella, determined that Roman's neck and back pain were non-severe medical impairments. R. 84. The ALJ gave these opinions,

> some weight to the extent that they accurately reflect that the claimant's physical complaints and treatment are much less prominent in the record compared to his mental impairments. However, since there are some positive clinical objective findings and the claimant complained of neck and back pain on a few different occasions, the undersigned concludes that they are reasonably 'severe,' supporting a limitation to medium work.

R. 32. The ALJ determined that a limitation of medium work adequately reasonably accommodates the limiting effects of Roman's lumbago and cervicalgia, which are exacerbated by his obesity. R. 30.

Substantial evidence supports the ALJ's conclusion that Roman's subjective complaints regarding the need to lie down during the day and rate of absenteeism from work do not require additional limitations in the RFC. No other physician in the record recommended more specific restrictive physical limitations than those included in the RFC. As noted, an ALJ's narrative discussion of all the evidence in support of his findings in determining a claimant's RFC is sufficient to comply with the function-by-function analysis under SSR 96-8P. Here, the ALJ fully discussed Roman's medical evidence, his allegations regarding his symptoms and

limitations, and the medical opinions in the record. R. 21–32. This narrative discussion allows the court to see how the evidence in the record—both medical and nonmedical—supports the ALJ's RFC determination. Thus, unlike in Monroe, the ALJ gave a sufficient explanation of why Roman's complaints of the need to rest during the day and inability to attend work did not translate into limitations in the RFC. The ALJ concluded that Roman retained the residual functional capacity to perform a range of medium work in an "accurate and logical" way. Monroe, 826 F.3d at 189 (quoting Clifford, 227 F.3d at 863).

The ALJ is not required to make specific findings related to Roman's subjective assertions that he must lie down during the day and will be absent from work. The ALJ was only required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Roman's alleged symptoms, and the medical opinions of record. Id. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### Assessment of Plaintiff's Allegations

Roman asserts that the ALJ's assessment of his allegations is not supported by substantial evidence and should be rejected as insufficient. Pl. Br. Summ. J. p. 23. Roman does not provide any specific argument or allegations in this section of his brief, other than generalizations about the ALJ's duty to assess a plaintiff's allegations. Roman does not identify any subjective complaints that the ALJ failed to consider. Nor does Roman identify specific instances in this case where the ALJ improperly applied the legal standards. Rather, Roman asks this court to re-evaluate his subjective allegations and come to a different conclusion from that of the ALJ. That is not the standard of a social security appeal. The issue before me is whether the ALJ applied

17

correct legal standards and his factual findings are supported by substantial evidence. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Having reviewed the record, I find that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** Roman's motion for summary judgment and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: March 19, 2020

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge